UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MATTHEW MAHLER,

Plaintiff,

v. Case No. 6:25-cv-1766-CAB

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

Defendant.

---

**ORDER**

This cause comes before the Court on Plaintiff Matthew Mahler's appeal of an administrative decision denying his claim for disability insurance benefits ("DIB") (Doc. 1). Upon review of the record, including the transcript of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 11), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties, the Court affirms the decision of the Commissioner of the Social Security Administration (the "Commissioner"), pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

Plaintiff joined the U.S. Army in February of 2008. (Tr. 63). He was later deployed as a "field artillery man" in Iraq, though he was ultimately discharged from service in or around 2012. (Tr. 62–64). After returning from Iraq, Plaintiff worked in various delivery and sales positions at Daytona Beverages, a beer wholesaler. (*Id.*).

Plaintiff ceased working for Daytona Beverages in April 2014, citing both "back pain" and "mental health" as reasons for leaving the company's employ. (Tr. 64–65).

Plaintiff later filed for DIB in May 2015. (Tr. 103, 208–212). He alleged an onset of disability on April 24, 2014, due to separate back and anxiety disorders. (*Id.*). At the time of his alleged onset of disability, plaintiff was thirty-two years old. (Tr. 105).

Plaintiff's application was denied initially and again on reconsideration. (Tr. 91–102, 104–119, 121, 126–128, 130–134). On July 10, 2018, plaintiff then attended a hearing held before an ALJ. (Tr. 52–90). In a decision dated August 3, 2018, the ALJ ultimately found Plaintiff not disabled under the Act. (Tr. 16–38). Plaintiff appealed the ALJ's decision to the Appeals Council, which on May 28, 2019, denied Plaintiff's request for review. (Tr. 1–6).

On July 31, 2019, Plaintiff appealed the ALJ's decision to this Court. (Tr. 1963). Prior to this Court deciding the appeal, Plaintiff filed an unopposed motion for remand. (Tr. 1965–67). That motion was granted by the Court. (Tr. 1966).

On January 26, 2021, another administrative hearing was held by the ALJ (Tr. 1904–1932), and on February 5, 2021, the ALJ found, for the second time, that Plaintiff was not disabled. (Tr. 1980–2011). The Appeals Council reviewed the ALJ's decision and, on January 26, 2024, issued an order again remanding the claim. (Tr. 2012–18).

On August 6, 2024, another administrative hearing was held before a different ALJ (Tr. 1870–1903), and, on August 20, 2024, the ALJ issued yet another decision unfavorable to Plaintiff. (Tr. 1832–1863). Plaintiff submitted written exceptions to the

Appeals Council, and, on July 11, 2025, the Appeals Council declined to reassume jurisdiction. (Tr. 1826–1831). Plaintiff filed this action for judicial review of the Commissioner's decision on September 24, 2025. (Doc. 1). Plaintiff has exhausted his available administrative remedies, and the case is properly before this Court.

## II. THE ALJ'S DECISION

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. § 1520(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently working at a substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work available in significant numbers in the national economy. *See Wright v. Comm'r of Soc. Sec.,* No. 24-11084, 2026 WL 1481204, at *1 (11th Cir. May 27, 2026);[1] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Following remand from the Appeals Council, the ALJ in the present case performed the sequential analysis through step five. (Tr. 1832–1856). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 24, 2014, through his date last insured of December 31, 2019. (Tr. 1837). At step two, the ALJ determined that Plaintiff had the following severe

---

1 "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 (11th Cir. 2007).

impairments: (1) degenerative disc disease of the lumbar spine, status post-fusion; (2) degenerative disc disease of the cervical spine, status-post remote fusion; (3) an anxiety disorder; (4) a depressive disorder; and (5) a post-traumatic stress disorder ("PTSD") (collectively, "affective disorders"). (Tr. 1837–1838). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 1838).

Before proceeding to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work involving simple tasks that avoids contact with others:

> After careful consideration of the entire record, the undersigned finds that . . . the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he needs to avoid ladders or unprotected heights. He needs to avoid the operation of heavy moving machinery. He needs a low stress work environment, meaning no production line. He needs simple tasks. He needs to avoid contact with the public or coworkers, meaning he needs tasks that do not require the assistance of others or require him to assist others in the performance of their tasks. He can occasionally bend, crouch, kneel, or stoop. He needs to avoid squatting or crawling. He needs to avoid the push/pull of arm controls or overhead reaching. He needs to avoid the operation of foot controls.

(Tr. 1839–40).[2]

---

2 Light work is defined by the SSR as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing–the primary difference between sedentary and most light

At step four, the ALJ next concluded that Plaintiff had "no past relevant work." (Tr. 1854). At step five, taking account of Plaintiff's age, education, work experience, and RFC, the ALJ lastly concluded that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, specifically highlighting those of "router," "collator operator," "marker," "tube operator," "document preparer," and "film touchup inspector." (Tr. 1855–56). As such, the ALJ found that Plaintiff was not under a disability at any time from April 24, 2014 (the alleged onset date) through December 31, 2019 (the date last insured). (Tr. 1856).

## III. STANDARD OF REVIEW

When, as here, "the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). This Court's authority to conduct judicial review of the Commissioner's determinations is derived from 42 U.S.C. § 405(g). Under this provision, a finding of fact made by the Commissioner is

---

jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances)." SSR 83-10; *see also Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (quoting 20 C.F.R. § 404.1567) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." (internal quotation marks omitted)).

"conclusive" so long as it is "supported by substantial evidence." § 405(g). "Substantial evidence is defined as more than a scintilla." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam). Rather, it encompasses "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Thus, in conducting its review, this Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the Commissioner's. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)); *see also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence"). Further, the Court must consider the record "as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). Finally, the Court reviews the Commissioner's legal conclusions *de novo*. *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam).

## IV. DISCUSSION

Plaintiff raises the following arguments on appeal: (1) the ALJ failed to comply with the remand representations of the Commissioner and subsequent remand order of the Appeals Council in that the ALJ did not properly evaluate the RFC and its vocational impact; (2) the ALJ's "mental" RFC evaluation does not comport with

SSR-96-8p because it fails to explain how Plaintiff can sustain work activities given his limitations resulting from his affective disorders; and (3) the ALJ's step-five determination is not supported by substantial evidence, specifically because it failed to provide a complete vocational description of Plaintiff's mental limitations and otherwise did not comply with the governing Dictionary of Occupational Titles ("DOT")-conflict ruling.

**A. The ALJ's Post-Remand Evaluation of Plaintiff's RFC and its Vocational Impact**

Plaintiff first contends that the ALJ erred by "failing to comply with [(1)] the Commissioner's Federal Court remand representations and [(2)] the Appeals Council's subsequent remand order by again failing to properly evaluate the [RFC] and its vocational impact," thereby meriting this Court's reversal of the ALJ's decision. (Doc. 15 at 15). The Court finds these arguments to be unpersuasive for the following reasons.

The parties dispute in their respective briefs the extent to which the Commissioner conceded that the RFC analysis previously conducted by the earlier ALJ was deficient. (*Compare* Doc. 15 at 16–17 *with* Doc. 18 at 6). A review of the Unopposed Motion for Entry of Judgment with Remand, previously filed by the Commissioner on March 18, 2020, reveals that the Commissioner expressly acknowledged that remand would be "appropriate for further administrative proceedings" and specifically instructed the ALJ to carry out the following:

> 1) Further evaluate Plaintiff's Veterans Administration disability rating; 2) further evaluate Plaintiff's maximum

> [RFC]; and 3) if warranted, obtain supplemental evidence from a vocational expert to clarify the effects of the assess limitations on the occupational base.

U.S. District Court for the Middle District of Florida, Case No. 6:19-cv-1415-G_S-E_K (Doc. 26). The Appeals Council then entered an Order, with additional elaboration, directing the ALJ to comply with these same three instructions. (*See* Tr. 1970–71).

Although Plaintiff correctly states that the ALJ was required to "take any action . . . ordered by the Appeals Council" on remand, the ALJ was also free to "take any additional action that [wa]s not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). This Court finds, after a thorough review of the ALJ's post-remand decision, that it materially complies with the Appeals Council's Order.

As an initial matter, the Court is satisfied that the ALJ sufficiently considered the VA's preceding disability determination in reaching his decision on remand. The ALJ reasoned that he was affording the VA's determination "little weight" on account of the fact that "the VA's disability rating decision regarding veteran's benefits does not address the factors which are relevant to the issue of disability under the Social Security Act . . . ." (Tr. 1853). Accordingly, the ALJ reasonably opined that, "although objective findings reported by the VA medical staff have been considered in assessing the claimant's functional limitations, their final opinion as to degree of disability . . . is not entitled to controlling weight." (*Id.*). Such observations expand upon those made by the previous ALJ (*cf.* Tr. 28) and substantively comply with the Appeals Council's Order.

Likewise, the ALJ on remand set out at considerable length his rationale for determining that Plaintiff had "the [RFC] to perform light work" throughout the pertinent periods at issue in this case, with the ALJ further grounding his decision in numerous specific references to the existing record. (*See* Tr. 1839–54). The ALJ extensively chronicled Plaintiff's purported physical and medical ailments, communicated the findings of over half-a-dozen individual medical professionals who had evaluated Plaintiff over a period of approximately five years, and further set out in significant detail why he felt that certain aspects of Plaintiff's testimony went against the weight of evidence on the record. (*See id.*). These pronouncements expanded upon those set forth in the prior ALJ's decision and, in doing so, complied with the Appeals Council's Order.

Lastly, the ALJ appears to have appropriately exercised his discretion, as the Appeals Council explicitly allowed, in considering supplemental evidence procured from a vocational expert, as will be discussed in greater detail, *infra*, in Section IV(C) of this Order. (*See* Tr. 1855–56). Accordingly, the ALJ does not appear to have materially deviated from either the Commissioner's Federal Court remand representations or the provisions of the Appeals Council's subsequent remand order.

**B. The ALJ's "Mental" RFC Evaluation**

Plaintiff next contends that the ALJ applied an improper standard in assessing his RFC. More specifically, Plaintiff asserts that the ALJ's "post-remand *mental* [RFC] evaluation violated Social Security Ruling 96-8p because it fails to explain how the ALJ's finding of moderate mental limitations affect [P]laintiff's ability to sustain work

on a regular and continuous basis." (Doc. 15 at 19) (emphasis added). The Court disagrees with Plaintiff's position for the reasons articulated below.

"The [RFC] is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)); *see also* SSR 96-8p(1) ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning work activities being conducted for "8 hours a day, for 5 days a week, or an equivalent work schedule."). Along with "age, education and work experience, the claimant's [RFC] is considered in determining whether the claimant can work." *Id.* (citing 20 C.F.R. § 1520(f)). Moreover, SSR 96-8p(4) specifies that:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

In the present case, the ALJ ultimately determined that Plaintiff was capable of performing a light level of work with several additional limitations, including a need to "avoid contact with the public or coworkers, meaning he needs tasks that do not require the assistance of others or require him to assist others in the performance of their tasks." (Tr. 1839–40). Critically, in arriving at this determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms; however, [Plaintiff's] statements concerning the

intensity, persistence and limiting effects of these symptoms *are not entirely consistent with the medical evidence and other evidence in the record* . . . ." (Tr. 1841) (emphasis added). For example, after setting out in detail Plaintiff's extensive medical history, the ALJ pertinently opined as follows:

> The records show the claimant has a treatment history for mental health symptoms; however, his follow up since the alleged onset date has been sporadic. In addition, the claimant has a history of noncompliance including self-discharging his medications, leaving the 9-14-week PTSD program after two days, and failing to show for multiple mental health appointments in 2015. Despite the claimant's allegations of disabling symptoms, mental status examinations do not document significant and work preclusive abnormalities. This conclusion is consistent with the medical expert testimony of Dr. Hamrick, and Dr. Cosgrove who stated that, based on the mental status observations in the record, there were no episodes of decompensation and no evidence of greater than moderate mental functional limitations. Progress notes state the claimant reported an improvement in his symptoms when medication compliant. Although he was noted to be distractible at times, the undersigned has accommodated for this in the residual functional capacity. Furthermore, when seen for physical complaints, the claimant's mental status examinations were typically normal, including a normal mood, affect, judgment, speech, and memory[.] The claimant also reported a variety of activities of daily living inconsistent with the mental inability to work. Although he testified, he would not be reliable due to his depression symptoms, treatment records state he took his sons to/from school daily while his wife was at work. Despite his allegations of social limitations, the claimant was able to drive, go to the public pool, and help manage his sons' football team, which he reported helped his depression. He recently testified that he does not go to church and does not feel comfortable anywhere but at home; however, the record shows that he reported attending church during at least part of the period at issue[.]

(Tr. 1849–50). It is not for this Court to decide such matters implicating the credibility of Plaintiff's representations and testimony anew. *See Winschel*, 631 F.3d at 1178.

Likewise, the Court finds that, in assessing Plaintiff's "mental" RFC, the ALJ fully complied with the requirements of SSR 96-8p by thoroughly considering the evidence, including Plaintiff's hearing testimony, the testimony of two medical experts, and Plaintiff's various medical and treatment records. (*See* Tr. 1839–54); *see also Harvey v. Soc. Sec. Admin., Comm'r*, No. 22-10281, 2022 WL 17175649, at *3–4 (11th Cir. 2022) (affirming the Commissioner's decision denying benefits to a social security claimant based in part on the fact that "[t]he ALJ described in detail how the record evidence supported [the claimant's] assessment and discussed specific medical facts . . . as well as nonmedical evidence . . . ."). The ALJ specifically took into account Plaintiff's "mental" RFC in conducting his analysis:

> [N]either the objective medical evidence nor the testimony of the claimant establishes that his mental ability to function has been so severely impaired as to preclude all types of work activity during the period at issue. The undersigned accounted for the combination of the claimant's mental impairments (depression, anxiety, PTSD, and a skin-picking disorder) during the period at issue by finding that he needed a low-stress work environment, meaning no production line; needed simple tasks; and needed to avoid contact with the public or co-workers, meaning that he needed tasks that did not require the assistance of others or required him to assist others in the performance of their tasks.

(Tr. 1850). As such, the Court finds that the ALJ's post-remand determination with respect to Plaintiff's "mental" RFC was indeed supported by substantial evidence. *See Foote*, 67 F.3d at 1560; *Lewis*, 125 F.3d at 1440.

### C. The ALJ's Step-Five Determination

Lastly, Plaintiff argues that the ALJ "[(1)] relied on vocational expert testimony that cannot constitute substantial evidence because the hypothetical failed to provide a complete vocational description of Plaintiff's mental limitations and [(2)] the ALJ failed to comply with the governing DOT-conflict ruling in effect at the time of the hearing." (Doc. 15 at 21). The Court finds these arguments to be unconvincing for the following reasons.

"Ordinarily, the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir. 1981). "Although there is no per se rule that a vocational expert be called to testify . . . the ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence . . . ." *Id.* (internal citations omitted). Where such a vocational expert has been called to testify, however, controlling authority has warned against "assum[ing] that because the vocational expert was aware of [the claimant's] psychological problems, that [the expert] took them into consideration in answering hypothetical questions *which referred only to physical impairments*." *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (emphasis added);[3] *see also Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (summarizing the Court's holding in *Brenem* to similar effect). As the Court

[3] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

in *Brenem* explained, in that case, it "at least ha[d] no basis for assuming that had these [psychological] factors been included in the hypothetical questions" posed to the vocational expert that the expert's answers "would have been the same." *Brenem*, 621 F.2d at 690.

Such circumstances do not mirror those of the present case. Demonstrative of this fact, in the transcript provided to this Court of the prior administrative hearing held on August 6, 2024, the following questions were posed to the vocational expert by the ALJ:

> Q. Let's assume the claimant is 42 years old, has a high school education plus some college. Assume further I find that he can perform light work and is limited by the following exertional and non-exertional impairments.
>
> He needs to avoid ladders or unprotected heights. He needs to avoid the operation of heavy, moving machinery. *He needs a low-stress work environment, by that I mean no production line. He needs simple tasks. He needs to avoid contact with the public or coworkers, and by that he needs tasks that do not require him to assist others in the performance of their tasks.*
>
> He can occasionally bend, crouch, kneel, or stoop. He needs to avoid squatting or crawling. He needs to avoid the push/pull of controls or overhead reaching. And he needs to avoid the operation of foot controls. At the entry level assume the claimant has no skills or semi-skills at all and that he is the age I previously described and has the work experience and education previously stated.
>
> Assume further that he could perform light work and has the exertional and non-exertional limitations I originally described. Are there any entry level jobs the claimant could perform, and if so, could you give us the title of the job and the number of jobs in the national economy? If there's some non-included sedentary level jobs, if you would describe those as well, please.

(Tr. 1896–97) (emphasis added). Later during this same hearing, the ALJ additionally engaged the vocational expert in a line of questioning to ensure that Plaintiff could take breaks during the day and also engage in a certain amount of "off task" behavior. (Tr. 1898–99).

These inquiries, as well as the vocational expert's responses to such questions, were relied upon by the ALJ in his Order dated August 20, 2024. (Tr. 1854–56). The ALJ's hypothetical questions sufficiently accounted for Plaintiff's mental health struggles by limiting Plaintiff to a low-stress work environment and simple tasks, restricting contact with the public and coworkers alike, and allowing for some tolerance of off-task behavior and unscheduled absences. (*See* Tr. 1896–99). Consequently, the Court rejects Plaintiff's argument that the ALJ's hypotheticals failed to adequately describe Plaintiff's psychological limitations. This is particularly so in light of the ALJ's determination as the finder of fact that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his anxiety and other impairments "are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 1841).

Finally, Plaintiff asserts, and the Commissioner does not appear to dispute, that the ALJ was required to comply with SSR 00-4p at the time that his Order dated August 20, 2024 was issued. Prior to its rescission,[4] SSR 00-4p provided, in pertinent

[4] Plaintiff helpfully provides further context as to the recent history of SSR 00-4p in his brief, stating: "SSR 00-4p was rescinded and replaced by SSR 24-3p effective January 6, 2025. SSR 24-3p contains no retroactivity provision and does not apply to hearings or decisions issued

part, that "before relying on" vocational expert ("VE") or vocational specialist ("VS") evidence to support a disability determination or decision, adjudicators must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT]" and "[e]xplain in the determination or decision how any conflict that has been identified was resolved."

In his August 20, 2024 Order, the ALJ expressly took this DOT-conflict ruling into account:

> [T]he vocational expert testified that the jobs outlined in the [DOT] were generated a number of years ago and the position of the document preparer has changed over time. The vocational expert testified this position now involves preparing the documents and no longer involves the use of microfilm, but the skill set remains the same; Addressor – now uses computer vs typewriter or handwritten for most tasks, skill set remains the same.
>
> Additionally, the vocational expert testified that while overhead reaching, off task behavior, breaks, and absenteeism, are not discussed [in] the DOT, this portion of her testimony is based on her training, education, and contact with employees in the work field concerning those industry standards. As for the overhead reaching, the vocational expert testified her testimony was based on an understanding [of] the job description of the particular activity involving the arm.
>
> *Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's responses are consistent with the information contained in the [DOT].*

(Tr. 1855–56) (emphasis added).

---

before its effective date. Accordingly, the ALJ was required to comply with SSR 00-4p in this case." (Doc. 15 at 23). The Commissioner does not dispute this in his own brief. (*See* Doc. 18 at 13).

Plaintiff summarily asserts that "the ALJ relied on boilerplate language stating the vocational expert's testimony was consistent with the DOT, without identifying any potential conflicts or explaining how such conflicts were resolved." (Doc. 15 at 24). However, as the Commissioner's own brief points out, (*see* Doc. 18 at 13), Plaintiff has failed to identify any specific conflicts between the vocational expert's testimony and the DOT that Plaintiff believes the ALJ should have identified and otherwise resolved. As the Eleventh Circuit has noted, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998); *see also Battle v. Comm'r, Soc. Sec. Admin.*, No. 19-12280, 2022 WL 846071, at *8 (citing *N.L.R.B.*, 138 F.3d at 1422) (M.D. Fla. Mar. 22, 2022); *Allen v. Comm'r of Soc. Sec.*, No. 6:18-cv-1806-Orl-DCI, 2020 WL 263665 (M.D. Fla. Jan. 17, 2020) (waiving perfunctory arguments as arguably abandoned). Accordingly, the Court finds that Plaintiff's argument does not merit the reversal of the ALJ's decision in this case.

## V. CONCLUSION

Upon consideration of the foregoing, it is **ORDERED AND ADJUDGED** that:

1. The Commissioner's final decision in this case is **AFFIRMED**; and

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on September 16, 2026.

Chauncey A. Bratt
United States Magistrate Judge

Copies furnished to:

Counsel of Record